Emra Joseph BONHAM, Plaintiff,

v.

DRESSER INDUSTRIES, INC., a corporation, Defendant.

Civ. A. No. 76–1067.

United States District Court,
W. D. Pennsylvania.

Dec. 28, 1976.

Robert R. Stone, James R. Duffy, Fine, Perlow & Stone, Pittsburgh, Pa., for plaintiff.

Donald E. Seymour, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for defendant.

## OPINION

McCUNE, District Judge.

This action arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the Act) and concerns an act of alleged age discrimination by the defendant, Dresser Industries, Inc. (Dresser), against plaintiff, a former employee. Plaintiff has filed a two-count complaint, alleging in Count I a violation of the Act and basing jurisdiction upon § 626(c) [1] of the Act and 28 U.S.C. § 1331. In Count II, plaintiff alleges a breach of an employment

---

1. Section 626(c) provides as follows:

   "(c) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter."

contract under Pennsylvania law, said to arise out of the same factual background as Count I, invoking this court's diversity jurisdiction. Presently before this court is the defendant's motion to dismiss both counts of plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) respectively of the Federal Rules of Civil Procedure.

The pertinent facts which comprise the basis for plaintiff's complaint may be briefly summarized. Plaintiff, a Pennsylvania resident, began his employment with the defendant[2] on March 18, 1968,[3] as a manager of profit planning in Dresser's Pittsburgh office. By April of 1974, plaintiff had attained the title of "Manager-Factory Accounting" and remained in this position until his discharge in 1975.

The actual date of plaintiff's discharge, however, has not been agreed upon by the parties. On the one hand, plaintiff contends that his employment with Dresser was "wrongfully and unlawfully terminated because of his age and for no other just cause" on December 31, 1975.[4] On the other hand, Dresser contends that plaintiff's employment was terminated on October 31, 1975,[5] because "his work performance was not up to the standards of the job.[6] At any rate, plaintiff was 46 years of age at the time of Dresser's alleged discriminatory action.[7]

Subsequent to October 31, 1975, plaintiff continued to receive regular bi-monthly paychecks throughout November and December of 1975. The last paycheck he received, dated December 31, 1975,[8] included a vacation payment to January 15, 1976. On January 13, 1976, plaintiff received a letter from Dresser which advised him of his rights under Dresser's Retirement Income Plan. The calculations pertinent to that plan were based on a termination date of December 31, 1975.[9] On January 15, 1976, plaintiff communicated with John V. James, President and Chief Executive Officer of Dresser Industries, Inc., regarding the possibilities of employment in another division of Dresser. His re-employment was denied by Dresser in communications dated January 19, 1976, and February 18, 1976.[10]

Thereafter, plaintiff went to Florida in an effort to find employment and returned to Pennsylvania in April of 1976. Plaintiff claims that it was at this time that he first became aware of his potential rights under the Act,[11] and consulted counsel in Butler, Pennsylvania. Then, on June 15, 1976, plaintiff consulted his present counsel who sent the required statutory notices by certified mail on June 16, 1976, to John O'Brien, Area Director for the United States Department of Labor,[12] and to the Pennsylvania Human Relations Commission.[13] These

2. It should be noted that plaintiff was employed in the Harbison-Walker Refractories, a division of Dresser Industries, Inc. As alleged in plaintiff's Complaint, paragraph 2, Dresser is a Delaware corporation, with its principal place of business in Dallas, Texas.

3. See plaintiff's Complaint, paragraph 4, and the Affidavit of Louis J. Reeg, Jr. (Vice President-Industrial Relations of Harbison-Walker Refractories, Division of Dresser Industries, Inc.) in Support of Dresser's Motion to Dismiss Plaintiff's Complaint, Affidavit Exhibit "A", paragraph 3.

4. See plaintiff's Complaint, paragraphs 5 and 11, and plaintiff's arguments in support of this date, to be presented, *infra.*

5. See affidavit of Louis J. Reeg, Jr., *supra,* paragraphs 4–8, and Affidavit Exhibit "A" attached thereto.

6. *Id.,* Affidavit Exhibit "B."

7. Plaintiff's date of birth is January 3, 1929.

8. See *Plaintiff's Affidavit, paragraph 2, and* Exh. "A" attached thereto.

9. *Id.,* paragraph 3, and Exh. "B" attached thereto.

10. *Id.,* paragraph 5, and Exhibits "D" and "E" attached thereto.

11. *Id.,* paragraph 6.

12. *Id.,* Exhibit "F".

13. *Id.,* Exhibit "G".

letters were received by the respective agencies on June 18, 1976. Subsequently, on August 20, 1976, plaintiff commenced this suit.

### I. The Act

The Age Discrimination in Employment Act was enacted in 1967 for the express purpose of promoting "employment of older persons based on their ability rather than age," and prohibiting "arbitrary age discrimination in employment." 29 U.S.C. § 621(b); *Burgett v. Cudahy Company,* 361 F.Supp. 617, 620 (D.Kan.1973). The provisions of the Act were intended to cover employers,[14] employment agencies and labor organizations, 29 U.S.C. § 623, and the prohibitions set forth in the Act are limited to individuals between the ages of 40 and 65 years of age, 29 U.S.C. § 631. Exempted from the proscriptions of the Act are those discharges based on "good cause," 29 U.S.C. § 623(f)(3).[15]

Although the primary responsibility for the enforcement of the Act is vested with the Secretary of Labor, the Act does permit an aggrieved individual to commence a civil action for legal or equitable relief, 29 U.S.C. § 626(c). However, such an action by an individual is subject to strict procedural requirements which are set forth in 29 U.S.C. § 626(d).[16]

Under § 626(d), an individual is required to file a notice of intent to sue with the Secretary within 180 days after the alleged discriminatory act occurred. Then, § 626(d) requires that the plaintiff wait sixty days following the notice of intent to sue before commencing suit. *Mizuguchi v. Molokai Electric Company,* 411 F.Supp. 590, 593 (D.Hawaii 1976). However, § 626(d) further provides that if § 633(b) [17] applies, the requisite notice of intent to sue must be filed within 300 days after the alleged discriminatory act occurred, or within 30 days after the receipt of notice of termination of state proceedings.

The act of alleged age discrimination took place in Pennsylvania. Pennsylvania is a State which has a law prohibiting age discrimination in employment [18] and establishing a State authority to grant or seek relief from such discrimination.[19] Pennsylvania law further requires that:

"... Any complaint filed pursuant to this section must be so filed *within ninety days* after the alleged act of dis-

**14.** The term, "employer," is defined at 29 U.S.C. § 630(b).

**15.** See footnote 6, *supra.*

**16.** Section 626(d) reads as follows, in pertinent part:

"(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed— (1) within one hundred and eighty days after the alleged unlawful practice occurred, or (2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier."

**17.** Section 633(b) reads as follows, in pertinent part:

"(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from

such discriminatory practice, no suit may be brought under Section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated. ..."

**18.** Section 955 of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.,* prohibits discrimination in employment because of age. § 955 reads as follows, in pertinent part:

"§ 955. *Unlawful discriminatory practices*
    It shall be an unlawful discriminatory practice, ...
    (a) For any employer because of the ... age ... of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required. ..."

**19.** 43 P.S. § 956 which establishes the Pennsylvania Human Rights Commission.

crimination. . . ." (emphasis supplied).[20]

Thus, there are three limitations periods relevant to the instant action: (1) the 180-day period for filing a notice of intent to sue with the Secretary under § 626(d)(1); (2) the 300-day period for filing a notice of intent to sue with the Secretary, if § 633(b) applies, under § 626(d)(2); and (3) the 90-day state period for filing a complaint with the Pennsylvania Human Rights Commission under 43 P.S. § 959.

## II. *Jurisdiction*

### A. *The Date of the "alleged unlawful practice," i. e., the Date of Termination of Plaintiff's Employment.*

▪ The threshold question which this court must decide is when the "alleged unlawful practice occurred," i. e., on October 31, 1975, as the defendant contends, or on December 31, 1975, as the plaintiff contends.[21] This determination is essential to our finding of whether plaintiff timely filed his notice of an intent to sue under the Act and Pennsylvania law. We will deal with the defendant's arguments in support of its contention first.

In support of Dresser's contention that October 31, 1975, was the date when the "alleged unlawful practice occurred,"[22] Dresser relies upon the Affidavit of Louis J. Reeg, Jr.,[23] which reveals that the following "occurred" on that date: (1) plaintiff's employment with Dresser was involuntarily terminated; (2) plaintiff was informed of said termination; (3) plaintiff never worked for Dresser subsequent to that date; and (4) plaintiff's employment was "officially" terminated for purposes of Dresser's personnel records and plaintiff's subsequent unemployment compensation application.

In response, plaintiff relies upon his own Affidavit and accompanying documents in support of his contention that December 31, 1975, is the effective date under the Act. These documents reveal that: (1) plaintiff continued to receive bi-monthly paychecks through December 31, 1975; (2) his rights under Dresser's Retirement Income Plan were based on a termination date of December 31, 1975; and (3) his Group Life Insurance remained in effect through December 31, 1975.

▪ With regard to plaintiff's receipt of regular paychecks through December 31, 1975, Dresser argues that such payments merely represented severance pay equivalent to what his salary would have been through December 31, 1975, and, therefore, such payments do not establish that the "unlawful practice occurred" on the date plaintiff received his last severance payment, i. e., December 31, 1975. On the contrary, Dresser argues, relying upon *Do-*

---

**20.** 43 P.S. § 959.

**21.** Since the defendant has moved to dismiss Count I of plaintiff's complaint for lack of jurisdiction over the subject matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and both parties have submitted affidavits upon which this court relies, defendant's motion to dismiss will be treated as one for summary judgment. See F.R.C.P. 12(b); *Doski v. M. Goldseker Co.,* 10 E.P.D. ¶ 10,582, at p. 6404 (D.Md.1975); *A. & M. Gregos, Inc. v. Robertory,* 384 F.Supp. 187, 193 n.16 (E.D.Pa. 1974).

Likewise, defendant's motion to dismiss Count II of plaintiff's Complaint, *infra,* for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of The Federal Rules of Civil Procedure will be treated as a motion for summary judgment in view of the filing of affidavits by both parties. See: *Burke*

*& Van Heusen, Inc. v. Arrow Drug, Inc.,* 233 F.Supp. 881, 882 (E.D.Pa.1964).

**22.** It should be noted at this point that nowhere within the Act is the term, "unlawful practice," defined so as to indicate what factors may be considered in determining what constitutes such a practice. Further, our research reveals only one case to date, *Moses v. Falstaff Brewing Corporation,* 525 F.2d 92 (8th Cir. 1975), which discusses this issue under the Act. Therefore, our determination presents an issue of first impression in this Circuit.

**23.** See footnotes 5 and 6, *supra.* Further, Dresser, in its brief, at page 5, argues that Reeg's Affidavit is uncontested. We disagree in light of plaintiff's submitted affidavit. See: *Smiley v. Gemini Investment Corporation,* 333 F.Supp. 1047 (W.D.Pa.1971).

*ski v. M. Goldseker Co., supra,* n.21, and *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir. 1975), that the "unlawful practice", if any, occurs on the date of the actual discharge even though plaintiff may receive severance payments thereafter. We agree. Although both *Doski* and *Olson* deal with alleged sex discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and both considered the issue of whether discrimination alleged by a former employer can constitute a "continuing" violation so as to toll the similar notice provisions of that Act, we find both courts' reasoning regarding when a "discharge" actually occurs to be persuasive in light of the definition of a "discharge" set forth in *In Re Public Ledger, Inc.,* 63 F.Supp. 1008, 1015 (E.D.Pa.1945), rev'd 161 F.2d 762 (3d Cir. 1947):

> ". . . To discharge an employee is to remove him temporarily or permanently from employment. . . . In order that there be a discharge by the employer, there must be some affirmative action taken by the employer. There must be some conduct on the part of the employer, indicating that he will no longer be bound by the contract of employment. . . . There must also be an intention on the part of the employer to abrogate the contract, and there must be some communication of that intent by word or act to the employee."

See also: *Fredericks v. Georgia-Pacific Corporation,* 331 F.Supp. 422, 428–29 (E.D.Pa. 1971).

We believe that plaintiff's "discharge" occurred on October 31, 1975, since Dresser orally communicated this fact to plaintiff on that date, plaintiff never performed further services for Dresser subsequent to that date, and plaintiff's personnel record and unemployment compensation application both listed that date as the "official" date of termination for Dresser's administrative purposes. The mere fact that plaintiff received severance pay until December 31, 1975, and pension benefits and life insurance were calculated through December 31, 1975, does not affect, in our opinion, the actual date when plaintiff's services were terminated by Dresser and he was effectively "discharged" from his employment. See: *Davis v. RJR Foods, Inc.,* 420 F.Supp. 930, 931, n.1 (S.D.N.Y.1976).

Although not cited in plaintiff's brief, our research indicates only one case that discusses this issue and lends support to plaintiff's position, *Moses v. Falstaff Brewing Corporation, supra,* n.22. This court is, of course, not bound by the decision of the Eighth Circuit. However, we believe that our opinion is in accordance with the holding in that case.[24]

Therefore, we hold that the "alleged unlawful practice," 29 U.S.C. § 626(d), occurred on October 31, 1975, and the statutory time periods begin to run from that date.

---

**24.** The facts presented in *Moses v. Falstaff Brewing Corporation, supra,* are somewhat similar to the facts presented here.

There, Falstaff advised plaintiff of her discharge from employment on November 12, 1973. Plaintiff did not perform further services for Falstaff subsequent to November 16, 1973. However, plaintiff was officially terminated by Falstaff, for administrative purposes on November 30, 1973, and was paid, apparently for accrued vacation time, through this date. Plaintiff filed a written notice of her intent to file suit with the Secretary of Labor on May 24, 1974.

Falstaff contended that November 12, when plaintiff was advised that she no longer had a job, or November 16, her last day of work, were the dates when plaintiff was "discharged." The acceptance of either date would have constituted untimely notice under the Act. Plaintiff, on the other hand, contended that November 30 was the effective date since her employment was terminated on that date for Falstaff's administrative purposes. Such date provided timely notice.

The issue presented was on which date did the "alleged unlawful practice" under the Act occur.

The court held that November 30 was the "crucial date" and, therefore, plaintiff fully complied with the Act's notice requirements. 525 F.2d at pages 94–95.

Our conclusion is in accordance with the Eighth Circuit's holding since here all of the above actions "occurred" on one day, October 31, 1975.

**B.** *Plaintiff's Alleged Failure to Comply with the Statutory Requirements of 29 U.S.C. §§ 626(d) and 633(b), and 43 P.S. § 959.*

Since we have concluded that the "alleged unlawful practice," i. e., plaintiff's discharge, occurred on October 31, 1975, we next turn to Dresser's contention that since plaintiff did not file the required notice of intent to sue with the Secretary within 180 days after the alleged unlawful practice occurred,[25] plaintiff's complaint must be dismissed.

■ We are aware of the great weight of authority which supports Dresser's contention, and recognize that other district and circuit courts have uniformly held that the 180-day notice requirement of 29 U.S.C. § 626(d)(1) is a jurisdictional prerequisite to filing an action under the Act.[26] Likewise, this principal has been followed in this District. See: *Balc v. United Steelworkers of America,* 6 E.P.D. ¶ 8948, at page 6039 (W.D.Pa.1973). Therefore, we find that plaintiff's letter of June 16, 1976, notifying the Secretary of his intent to file an age discrimination action under the Act, which was sent 229 days after his alleged unlawful discharge, did not comply with the 180-day requirement of § 626(d)(1) of the Act.

We thus turn to the question of whether plaintiff falls within the ambit of § 626(d)(2) of the Act, where notice can be given within a 300-day period following an alleged unlawful practice.

Section 626(d)(2) affords its more liberal notice period only in those situations in which § 633(b) of the Act is applicable. Section 633(b), as stated earlier, applies to those actions in which the alleged unlawful practice occurred in a state which has (1) a law prohibiting age discrimination in employment and (2) a state agency authorized to seek relief for individuals suffering age discrimination. Pennsylvania is a § 633(b) state.[27]

Dresser contends that the more liberal 300-day notice period of § 626(d)(2) is not applicable here since, before commencing suit in this court, plaintiff failed to file his complaint with the Pennsylvania Human Rights Commission within 90 days of October 31, 1975, as required by 43 P.S. § 959, or at most, within the 180-day period set forth in § 626(d)(1) of the Act, and, therefore, this failure is a jurisdictional bar to plaintiff's suit in this court.

■ In response, plaintiff argues that the Act does not require him to exhaust state remedies as a prerequisite to the institution of a federal suit, citing *Goger v. H. K. Porter Company, Inc.,* 492 F.2d 13, 15 (3d Cir. 1974).[28]

---

**25.** As Dresser points out in its brief, page 6, plaintiff's letter to the U.S. Department of Labor, dated June 16, 1976, was mailed 229 days after the October 31, 1975 discharge date.

**26.** Fourth Circuit: *Raynor v. Great Atlantic & Pacific Tea Company, Inc.,* 400 F.Supp. 357 (E.D.Va.1975); Fifth Circuit: *Edwards v. Kaiser Aluminum Chemical Sales, Inc.,* 515 F.2d 1195, 1199 (5th Cir. 1975); *Powell v. Southwestern Bell Telephone Company,* 494 F.2d 485, 488 (5th Cir. 1974), reh. den. 498 F.2d 1402 (5th Cir. 1974); *Brohl v. Singer Company,* 407 F.Supp. 936, 938 (M.D.Fla.1976); *Cochran v. Ortho Pharmaceutical Company,* 376 F.Supp. 302, 303 (E.D.La.1971); Sixth Circuit: *Eklund v. Lubrizol Corp.,* 529 F.2d 247, 249 (6th Cir. 1976); *Rucker v. Great Scott Supermarkets,* 528 F.2d 393, 394 (6th Cir. 1976); *Ott v. Midland Ross Corporation,* 523 F.2d 1367, 1370 (6th Cir. 1975); *Hiscott v. General Electric Company,* 521 F.2d 632, 633, 34 (6th Cir. 1975); Ninth Circuit: *Oshiro v. Pan American World Airways, Inc.,* 378 F.Supp. 80, 82 (D.Hawaii

1974); Tenth Circuit: *Law v. United Air Lines, Inc.,* 519 F.2d 170 (10th Cir. 1975).

*Cf., Dartt v. Shell Oil Company,* 539 F.2d 1256, 1259 (10th Cir. 1976), petition for cert. filed, 45 U.S.L.W. 3435 (U.S. November 15, 1976) (No. 76–678).

**27.** See footnotes 18 and 19, *supra.*

**28.** Plaintiff's argument which relies upon particular language stated by the Third Circuit at page 15 of the *Goger* opinion, *supra,* is misplaced in the context of that opinion and incorrectly responds to Dresser's jurisdictional argument. The pertinent language was explained in *Magalotti v. Ford Motor Company,* 418 F.Supp. 430, 433 (E.D.Mich.1976). As the *Goger* court pointed out, although a plaintiff does not have to thoroughly exhaust state remedies before commencing suit in federal court (since under the Act a plaintiff could timely file *both* a federal claim, and state claim within 90 days in accordance with state law) a plaintiff must nevertheless first seek relief from the appropri-

This issue, namely whether a plaintiff is required to initially make a timely report to an appropriate state agency before commencing a federal action and whether failure to do so serves as a jurisdictional bar to plaintiff's action, has been considered by this Circuit on two prior occasions, and both of the applicable cases have been discussed by the parties in their respective briefs.

In *Goger v. H. K. Porter Company, Inc., supra,* New Jersey law required that age discrimination in employment complaints be filed within 180 days of the alleged act of discrimination. However, plaintiff never filed a complaint with the appropriate New Jersey state agency responsible for the elimination of unlawful discrimination in employment based on age prior to the institution of her federal suit. The central issue presented was thus, whether § 633(b) requires an aggrieved individual to initially seek redress from the state agency before instituting suit in federal district court. The court addressing this issue stated:[29]

". . . [A]lthough the Act does not require an aggrieved person to exhaust state remedies as a condition precedent to the institution of a federal suit, it does require that the State be given a threshold period of sixty days in which it may attempt to resolve the controversy, normally by voluntary compliance. (492 F.2d at p. 15).

\* \* \* \* \* \*

We . . . conclude that section 633(b) required [plaintiff] to seek relief from the appropriate New Jersey agency prior to instituting her suit in the federal district court." (492 F.2d at p. 16.).

However, the court nevertheless vacated an order of dismissal, despite the failure of the plaintiff to resort to the state agency prior to filing a federal action for age discrimination, on "equitable" grounds, because plaintiff had been misled by a Labor Department representative and there had been no prior reported cases on this jurisdictional point. The court stated:

". . . [W]e . . . consider equitable relief to be appropriate in view of the total absence . . . of any judicial decision construing section 633(b) during the period involved here and in view of the remedial purpose of the 1967 Act. *In the future, however, we think the Congressional intent that state agencies be given the initial opportunity to act should be strictly followed and enforced.*" 492 F.2d at p. 17. (Emphasis supplied). See also: *Sutherland v. SKF Industries, Inc.,* 419 F.Supp. 610, 612–13 (E.D.Pa.1976).

In the second case, *McGarvey v. Merck & Co., Inc.,* 359 F.Supp. 525 (D.N.J.1973), vacated without opinion, 493 F.2d 1401 (3d Cir. 1974), *cert. den.,* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974), although plaintiff timely filed his notice of intent to sue with the Secretary of Labor under § 626(d)(1), he failed to allege that he had filed a complaint with or commenced proceedings before the Pennsylvania Human Relations Commission pursuant to 43 P.S. § 951, *et seq.* In fact, plaintiff never filed with the state agency. On this basis, defendant contended that § 633(b) of the Act barred plaintiff's action, relying upon cases interpreting 42 U.S.C. § 2000e–5(c), an analogous provision of Title VII of the Civil Rights Act of 1964, to require primary resort to state remedies as a jurisdictional prerequisite to a suit under the Act.[30] The

ate state agency before filing a federal claim, absent equitable considerations.

**29.** See footnote 28, *supra.*

**30.** The similarity between Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* and the Age Discrimination in Employment Act, *supra,* has been recognized in numerous cases: First Circuit: *Skoglund v. Singer Company,* 403 F.Supp. 797, 801–02 (D.N.H.1975); Third Circuit: *Goger v. H. K. Porter Company, Inc., supra,* at pages 15–16; *McGarvey v. Merck &*

*Co., Inc., supra,* at page 527; Fifth Circuit: *Woodford v. Kinney Shoe Corporation,* 369 F.Supp. 911, 914–915 (N.D.Ga.1973); Sixth Circuit: *Gabriele v. Chrysler Corporation,* 416 F.Supp. 666, 667–68 (E.D.Mich.1976); Eighth Circuit: *Moses v. Falstaff Brewing Corporation, supra,* at page 94; Ninth Circuit: *Curry v. Continental Airlines,* 513 F.2d 691, 696 (9th Cir. 1975); Tenth Circuit: *Dartt v. Shell Oil Company, supra,* at page 1259; *Burgett v. Cudahy Company, supra,* at page 620.

court, accepting defendant's contention, dismissed plaintiff's complaint [31] stating:

> "Section 633(b) should be construed to mean that plaintiff must first attempt to utilize available state remedies before filing a complaint alleging discrimination based upon age.
>
> \* \* \* \* \* \*
>
> Thus, it is the opinion of this Court that where substantial relief against alleged age discrimination is available under state law, 29 U.S.C. § 633(b) requires the person aggrieved to pursue state remedies prior to filing a complaint with this Court.
>
> [Citing *Goger v. H. K. Porter Company, Inc., supra.*] Since plaintiff here has failed to allege or offered to establish prior resort to the appropriate state remedy, this Court lacks jurisdiction over the subject matter. . . ." (359 F.Supp. at p. 528).

Both of these cases relied upon by the parties, however, have a distinguishable feature from the instant case in that the plaintiffs in those cases never applied to a state agency. Here, plaintiff did apply to the applicable state agency, but was 139 days late under 43 P.S. § 959 and 49 days late under § 626(d)(1) of the Act. See: *Gabriele v. Chrysler Corporation, supra,* n.30, at page 668.

It is our conclusion, based upon the particular facts presented here and the language presented by the Third Circuit in *Goger* and *McGarvey,* that a plaintiff is required by § 633(b) of the Act to initially commence an action with the appropriate state agency prior to instituting suit in federal district court and failure to do so constitutes a jurisdictional bar to a federal court action.[32]

We, therefore, hold that plaintiff's failure to file a complaint within 90 days after October 31, 1975, as required by 43 P.S. § 959,[33] or within the shorter 180-day federal period[34] bars the instant action. Accordingly, Count I of plaintiff's complaint must be dismissed.

**III. Defendant's Alleged Breach of Plaintiff's Employment Contract**

In Count II of plaintiff's complaint, plaintiff alleged a breach of an oral contract of employment under Pennsylvania law,[35] invoking this court's diversity jurisdiction. In particular, plaintiff alleged that his employment with Dresser was "wrongfully and unlawfully terminated . . . because of [his] age and for no other just cause . . . [thereby] . . . contrary to the public policy of . . . Pennsylvania."

In response, Dresser contends that plaintiff failed to allege, in his complaint, any

---

Cf., *Vazquez v. Eastern Airlines, Inc.,* 405 F.Supp. 1353 (D.P.R.1975).

**31.** The Third Circuit vacated the district court's order of dismissal here presumably on the same ground that the *Goger* case vacated a dismissal.

**32.** See also: *McGinley v. Burroughs Corporation,* 407 F.Supp. 903, 908 (E.D.Pa.1975); *Vaughn v. Chrysler Corporation,* 382 F.Supp. 143 (E.D.Mich.1974). Cf., *Curry v. Continental Airlines, supra,* n.30. Contra, *Skoglund v. Singer Company, supra,* n.30, at page 802; *Smith v. Jos. Schlitz Brewing Company,* 419 F.Supp. 770, 774 (D.N.J.1976).

**33.** See: *Gabriele v. Chrysler Corporation, supra,* which is factually on point with the case presented here.

**34.** See: *Bertsch v. Ford Motor Company,* 415 F.Supp. 619, 621–22, 627 (E.D.Mich.1976),

wherein the court held that although plaintiff failed to comply with Michigan's 90-day limitations period due to lack of knowledge and belated attempts at compliance, a federal action was not precluded since plaintiff did file a notice of intent to sue within § 626(d)(1)'s 180-day period.

**35.** A contract of employment is governed as to its construction and effect by the law of the place where the contract was made, it having been made when and where the last act necessary for its formation has taken place. *Shipley v. Pittsburgh & L. E. R. Co.,* 83 F.Supp. 722, 739 (W.D.Pa.1949). Since this contract was executed in Pennsylvania, Pennsylvania law therefore controls.

duration or tenure of an alleged employment contract, and, therefore, absent such an allegation, Pennsylvania law states that such contract may be terminated *at will* by either party. In support, Dresser relies upon the principles set forth in *Jackman v. Military Publications, Inc.,* 234 F.Supp. 217, 218 (E.D.Pa.1964), *aff'd* 350 F.2d 383, 385 (3d Cir. 1965), and *McKinney v. Armco Steel Corporation,* 270 F.Supp. 360, 362 (W.D.Pa.1967).

In *Jackman,* the court, citing *Cummings v. Kelling Nut Co.,* 368 Pa. 448, 451–52, 84 A.2d 323, 325 (1951), stated the Pennsylvania rule concerning the termination of employment contracts as follows:

"The general rule is that when a contract provides that one party shall render services to another or shall act as an agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will. (Citation omitted). The burden is on the plaintiff in such cases to overcome the presumption by showing facts and circumstances establishing some tenure of employment. . . ."[36]

In *McKinney,* the court stated:

"Absent a contract of employment for a definite term or unless restrained by some labor union contract, an employer may discharge an employee at will, anytime, without cause or reason, or for any reason he believes justifies the discharge, even though the employee believes the reason to be false. In such cases no action for damages can be maintained for wrongful discharge."[37]

Plaintiff, in response, relies exclusively upon *McGinley v. Burroughs Corporation, supra,* n.32, at page 910. In *McGinley,* the

court noted that discrimination by an employer on account of age is against the public policy of Pennsylvania, 43 P.S. § 952(b). The court then stated:

"Accepting plaintiff's allegation that he was discharged by the defendant on account of age as being true, then clearly such action is illegal because it is contrary to the public policy of Pennsylvania. Any contract, including a contract at will, which is terminated for a reason contrary to the public policy of Pennsylvania gives rise to a claim for breach of contract."

Plaintiff urges this court to accept the reasoning presented in *McGinley* and adopt it in the factual context presented here.

Our research reveals no other case that addresses this particular issue. Thus, we are presented with the difficult situation of reconciling two different theories of argument advanced by the parties in their respective briefs, both of which accurately state the position of existing law, but which necessarily culminate in a diametrically opposite result.

■ As a starting point for our analysis, we must consider plaintiff's employment situation with Dresser. From our review of the record presented it is apparent that no formal, express written contract of employment was entered into by the respective parties, either at the time of plaintiff's hiring[38] or at a time prior to plaintiff's discharge. Further, no evidence has been presented by plaintiff which would indicate that his oral contract or employment was to last for any definite length of time. Thus, we find that plaintiff's employment was "at will," and, under applicable Pennsylvania law, subject to termination at any time by either party. Accordingly, due to the nature of the contract involved, plaintiff would be barred from maintaining an action for damages for his alleged wrongful

---

**36.** See also: *Green v. Medford Knitting Mills, Inc.,* 408 F.Supp. 577, 579 (E.D.Pa.1976).

**37.** *McKinney* was cited in the Appendix Opinion to *deMarrais v. Community College of Allegheny County,* 407 F.Supp. 79, 82 (W.D.Pa. 1976). See also: *Hanna v. R. C. A. Service*

*Company,* 336 F.Supp. 62, 64 (E.D.Pa.1971); *Weir v. Hudson Coal Co.,* 99 F.Supp. 423, 426 (M.D.Pa.1951).

**38.** See plaintiff's complaint, ¶ 11, and footnote 3, *supra.*

discharge unless, of course, the applicable age discrimination statutes or the *McGinley* case provide some means for relief.

It is clear that prior to the enactment of the Pennsylvania Human Relations Act of 1961 and the Federal Age Discrimination in Employment Act of 1967, plaintiff could not have maintained an action for breach of contract or wrongful discharge against Dresser, absent a contract of employment for a definite term, which as stated above, is not presented by the instant facts. With the enactment of these statutes, a discharged employee could commence a suit in federal court [39] when he believed that his discharge was purely discriminatory and based upon his age.[40] However, the statutes, by their clear language, were designed and intended to protect only against various types of *discrimination* [41] which occur in employment relationships, and not merely to attack various discharges where age may have been a factor in the employer's decision, but some form of discrimination is not presented.

■■■ Therefore, under the applicable statutes, we find that, notwithstanding the pertinent filing requirements, some form of discrimination has to be alleged by an aggrieved plaintiff in order for him to recover thereunder. A thorough review of the record before us fails to establish any basis for an age *discrimination* claim by plaintiff since we note a clear absence of any evidence in either plaintiff's complaint or his supporting affidavit which tends to show

that younger, and perhaps as equally qualified, employees were hired as replacements for plaintiff's former position. In this respect, plaintiff's reliance upon *McGinley v. Burroughs Corporation, supra,* is clearly distinguishable, since in that case evidence was submitted by plaintiff which revealed that younger employees were hired by the defendant company, allegedly with the intention that these employees were to be replacements for plaintiff subsequent to his discharge. 407 F.Supp. at pages 906, 910.

We believe that the logic presented by the court in the *McGinley* decision was intended to carve out an exception to the uniform Pennsylvania rule regarding the termination of "at will" employment contracts. Essentially, the reasoning presented in *McGinley* states that if some sort of discrimination in discharge can be shown to exist, then such action by an employer is indeed illegal, since it is violative of public policy, and, therefore, such action would give rise to a breach of contract claim. However, we find that the exception presented in *McGinley*, and relied upon exclusively by plaintiff, in support of Count II of his complaint, is not presented by the instant facts. Therefore, we decline to accept the principle set forth in *McGinley* as applicable to the factual averments present here.

■■■ Further, we respectfully disagree with the *McGinley* court's holding that an illegal discharge, i. e., a discriminatory discharge, gives rise to a breach of *contract*

**39.** The Pennsylvania Act, 43 P.S. § 951, *et seq.,* does not have a provision similar to § 626(c) of the Federal Act, 29 U.S.C. § 626(c), which permits an aggrieved individual to commence a civil action for legal or equitable relief. In this respect, all civil actions based upon alleged age discrimination can be filed in federal court, subject to the applicable state filing requirements. See footnote 20, *supra.*

**40.** 29 U.S.C. §§ 621, 623, 633; 43 P.S. §§ 952, 953, 955. See also: *McIlvanie v. Pennsylvania State Police,* 6 Pa.Cmwlth. 505, 511, 296 A.2d 630, 633 (1972), *aff'd* 454 Pa. 129, 309 A.2d 801 (1973), *app. dis'm.* 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974).

**41.** The term, "Discrimination," has been defined under the Civil Rights Act in the context of a sex discrimination case and is, therefore, equally applicable here. (See footnote 30, *supra* ). That definition reads as follows:

" 'Discrimination' . . . is in general a failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored."

*Baker v. California Land Title Company,* 349 F.Supp. 235, 238–39, (C.D.Cal.1972), *aff'd.* 507 F.2d 895 (9th Cir. 1974), *cert. den.* 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975). See also: Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1).

claim, whether the discharge be under an "at will" employment contract, or otherwise. Rather, we prefer to say that a discriminatory discharge from a job held at will gives rise to a *civil rights* claim although it may sound in contract. We say this because there is no actual contract presented binding an employer to retain an employee at will for any length of time.

We thus conclude that if an employee can allege a discriminatory discharge from employment on account of age, and timely file the appropriate notices set forth in the respective Acts, an appropriate action under the age discrimination statutes can be commenced. Likewise, if the employee can present evidence supporting such a claim of discrimination, a breach of "contract" action may lie within the exception to the Pennsylvania law concerning the termination of "at will" employment contracts as set forth in *McGinley*.

Since plaintiff has failed to meet both of the requirements set forth above, and has failed to set forth any evidence which establishes that his oral employment contract was to last for any definite length of time, Count II of plaintiff's complaint must be dismissed and defendant's motion for summary judgment is, therefore, granted.