Thomas A. JACKSON, Plaintiff,

v.

ALCAN SHEET & PLATE, Division of Alcan Aluminum Corporation, Defendant.

No. 78–CV–122.

United States District Court, N. D. New York.

Oct. 6, 1978.

Shanley & Sullivan, Oswego, N. Y., for plaintiff; John T. Sullivan, Jr., Oswego, N. Y., of counsel.

Bond, Schoeneck & King, Syracuse, N. Y., for defendant; Paul M. Sansoucy, Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This action was brought pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b) (hereinafter "ADEA"), by a former employee of defendant Alcan Sheet & Plate Division of Alcan Aluminum Company. Plaintiff's action was also founded on the Civil Rights Act of 1871, 42 U.S.C. § 1983.

The case is now before the Court on defendant's motion for summary judgment or dismissal under Fed.R.Civ.P. 12(b) insofar as the action is based on 42 U.S.C. § 1983, and for summary judgment or dismissal for lack of subject matter jurisdiction with respect to the ADEA action.

Plaintiff Thomas A. Jackson was notified on February 13, 1975, by his employer, Alcan Sheet & Plate ("Alcan"), to the effect that his job as a salaried scheduler was to be terminated. Plaintiff, at age 57, was the oldest of the four salaried schedulers, three of whom were retained in that position. When the notice of termination was given, plaintiff was also informed that he had the option of exercising his seniority rights to be eligible to return to an hourly production job. Plaintiff ceased performing services for Alcan on February 21, 1975. On February 28, 1975, he advised Alcan that he did not wish to exercise the proffered option to accept a lesser position; at this time, in the words of Alcan's personnel manager, plaintiff's termination became "final and irrevocable."

Plaintiff contacted Alcan's corporate offices in Cleveland, Ohio, seeking review of the company's action, and on March 11th received a reply, asking that he allow time for the company to investigate. On March 31, plaintiff was informed of the company's determination that plaintiff had been laid off in the course of a general reduction in force, in a manner procedurally consistent with others similarly situated. The March 31 letter also emphasized that the company had made every effort to allow plaintiff to assert his seniority rights in securing an alternate position.

Plaintiff filed a timely complaint with the New York State Division of Human Rights, alleging unlawful discrimination because of age. This complaint was dismissed on October 15, 1975, after investigation and attempts at mediation. On October 24,

1975, plaintiff filed a notice of appeal with the State Human Rights Appeal Board, and on December 24, 1975, filed a notice of intent to sue with the Secretary of Labor, as required by 29 U.S.C. § 626(d) as a prerequisite to commencing a civil action under the ADEA.

As a result of serious personnel shortages and a large backlog of cases, plaintiff's appeal to the State Human Rights Appeal Board was not heard until January of 1977. A decision was finally returned on August 30, 1977, affirming the dismissal originally rendered nearly two years earlier.

Plaintiff chose at this point not to seek judicial review of this decision through a proceeding in the Appellate Division as provided under Human Rights Law § 298, N.Y. Executive Law (McKinney's) but sought rather to pursue the available federal remedies. A Complaint was filed in Federal Court on March 16, 1978.

Defendant Alcan asserts in the motion here under consideration that the applicable statutes of limitation have expired with respect to plaintiff's action under both 29 U.S.C. § 626 and 42 U.S.C. § 1983. Section 7 of the ADEA, 29 U.S.C. § 626(e), incorporates the statute of limitations section (§ 6) of the Portal-to-Portal Pay Act of 1947, 29 U.S.C. § 255, which provides in relevant part:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—
> (a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued; . . .

Thus, the ADEA allows, at most, three years to pass after the cause of action accrues, and then only if plaintiff can successfully plead a willful violation.

Since plaintiff ceased working for Alcan more than three years before the filing of his Complaint, but maintained contacts with his former employer for approximately seven months from the date of termination so as to potentially make his action timely, the determination of the event which triggered the accrual of plaintiff's cause of action is of primary importance.

Plaintiff asserts that the continuance of a financial relationship with Alcan, involving the accrual of pension benefits and the withholding of money for bond purchases through September, 1975, constitutes a sufficient on-going employment relationship so that there was no actual termination until these benefits incident to employment had ceased. Alternatively, plaintiff suggests that the March 31, 1975 letter from Alcan's headquarters refusing to remedy the termination procedure marked the point at which the termination became final according to plaintiff's reasonable expectation. Thus the fact that the company's initial reply on March 11 asked plaintiff to "allow necessary time to explore the matter" should estop the company from asserting that the employment relationship had terminated prior to March 31.

It has become well established since the Supreme Court's decision in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), that a cause of action accrues when plaintiff knows or has reason to know of the injury which is the basis for the action.

Cases decided under the ADEA have been consistent in holding that the cause of action accrues on the date when the employer violates the employee's rights by discharging him on the basis of age. The date of discharge is generally determined to be the date upon which the employee ceases to perform services for the employer. *Davis v. R.J.R. Foods, Inc.,* 420 F.Supp. 930, 931 n.1 (S.D.N.Y.1976), aff'd w/o op., 556 F.2d 555 (2d Cir. 1977); *Bonham v. Dresser Industries, Inc.,* 424 F.Supp. 891, 895–96 (W.D.

Pa.1976); *Monroe v. Penn-Dixie Cement Corp.*, 335 F.Supp. 231, 233–34 (N.D.Ga. 1971). For example, in a case where the employee was unlawfully discharged on January 4, but was fraudulently induced by his employer on October 7 to accept early retirement and forego his ADEA rights on the employer's representation that he would be hired as a consultant, the cause of action was held, nevertheless, to have accrued on January 4. *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975).

■ Plaintiff in the present case received notice of his impending termination on February 13, 1975, and ceased performing services for Alcan on February 21. It is undisputed that February 21 was the last day plaintiff worked for Alcan, and, absent other factors warranting calculation from a later date, the Court must conclude that the statute of limitations began to run from February 21, 1975.

There is some authority for the proposition that, where the employer shows clear intent to dispense with the services of an employee, timeliness of a suit under the ADEA is measured from the date after which services are no longer accepted. *Payne v. Crane,* 560 F.2d 198 (5th Cir. 1977). By this reasoning, plaintiff's discharge could be determined to have occurred on February 28, 1975, when he finally refused his option for an alternate position, and from which date Alcan was no longer willing to accept plaintiff's services. The Court, however, hesitates to find that the actual discharge occurred at this time, since to do so would have the potential effect of discouraging employers from granting an extension of time during which terminated employees may come to a reasoned decision as to available options.

■ Similarly, the fact that plaintiff continued to receive benefits until September, 1975, cannot be said to prolong the actual period of employment so as to affect the accrual of plaintiff's cause of action. The "unlawful practice" under the ADEA occurs on the date of actual discharge of the employee even though he may receive severance payments thereafter. *Doski v.*

*M. Goldseker Co.,* 539 F.2d 1326, 1328 n.3 (4th Cir. 1976); *Bonham v. Dresser Industries, supra.* A logical extension of plaintiff's reasoning would equate the receipt of pension benefits by a retired employee with continued employment. *Davis v. R.J.R. Foods, Inc., supra.* To allow the cause of action to accrue from the termination of benefits incident to employment would have the undesirable effect of discouraging employers from granting such benefits to terminated employees.

■ With regard to plaintiff's assertion that his final termination did not occur until his receipt of the March 31, 1975 letter from Alcan's headquarters, it is the Court's determination that this letter was merely a refusal to remedy the prior allegedly discriminatory practice. As such, it is not relevant to the accrual of plaintiff's cause of action. If the period of limitations ran from the date on which the employer refused to remedy a prior unlawful practice under the Act, the period of limitations could be extended indefinitely at the option of the person allegedly discriminated against. *Ott v. Midland-Ross Corp.,* 523 F.2d at 1369.

The cessation of plaintiff's work for Alcan, on February 21, 1975, constituted the event by which plaintiff must be said to have known with sufficient certainty that he had been injured through an allegedly discriminatory act on the part of his employer. Subsequent failures to remedy this act, or steps taken to mitigate its effect, do not alter the timing of the discriminatory act itself. The event which triggered the accrual of plaintiff's cause of action was the termination of his job on February 21, 1975. Defendant's allegedly discriminatory actions were clearly manifested at that time so as to warrant the commencement of the statutory time period during which plaintiff may resort to the remedies provided by the ADEA. Even giving plaintiff the benefit of a three-year limitation period by assuming that Alcan engaged in a willful violation, his action under the ADEA must be barred as untimely, unless equitable considerations justify tolling of the statute of limitations. See *Abbott v. Moore Business*

*Forms, Inc.,* 439 F.Supp. 643, 645 (D.N.H. 1977).

■■■ The Court recognizes that the ADEA is remedial, humanitarian legislation which should be liberally construed to effectuate the congressional purpose of ending age discrimination in employment, and that the statute of limitations has frequently been held subject to equitable modification. *Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir. 1976), aff'd w/o op. by an equally divided court, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977); *Moses v. Falstaff Brewing Corp.,* 525 F.2d 92 (8th Cir. 1975); *Skoglund v. Singer Co.,* 403 F.Supp. 797 (D.N.H.1975). But consideration must also be given to the fact that this is a statutory cause of action not existing under prior law. When such a legislative enactment fixes the time in which action may be commenced, commencing of action within the time specified is an indispensable condition of liability, and upon expiration of the time established, both the right and the remedy are destroyed. *Chambliss v. Coca-Cola Bottling Corp.,* 274 F.Supp. 401 (E.D.Tenn.1967), aff'd, 414 F.2d 256 (6th Cir. 1969), cert. denied, 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970).

■■■ In the present case, plaintiff has not shown that he was induced or influenced by defendant Alcan to delay filing his ADEA suit; indeed, plaintiff did file a timely suit with the State Human Rights Commission after having received the letter of March 31, 1975, refusing to remedy the prior company action. There is no evidence of intent on the part of Alcan to induce delay by means of its investigation into the circumstances surrounding plaintiff's discharge. There are no allegations that the defendant in any way prevented plaintiff from learning of his ADEA rights or acted in any way to prejudice plaintiff's case so as to justify being estopped from asserting the statute of limitations. Because of the requisite preparation for prior State proceedings, it cannot be said that there would be prejudice to defendant in allowing plaintiff to maintain his suit. But this in itself does not justify denying defendant the protection afforded by the statute of limitations, absent prejudicial behavior on its part.

The proposed amendments to the ADEA, insofar as they represent a trend toward modifying certain procedural aspects of the original enactment, cannot be interpreted in such a way as to give plaintiff the benefit of prospective application. Included in the proposed amendments is a provision allowing the statute of limitations to be tolled for up to one year while the Secretary of Labor attempts conciliation,[1] in the interest of allowing the case to be decided on the merits if the conciliation process fails. The intent of the amendment, as expressed in the Senate Committee Report, S.Rep.No. 95–493, 95th Cong., 1st Sess. 12 (1977), is to prevent those who have violated the Act from delaying and postponing conciliation and thereby possibly avoiding liability. Such a situation does not exist under the present circumstances, as the Secretary's efforts at conciliation had been completed long before the filing of this suit.

■ Plaintiff had no control over the unfortunate circumstance that the State proceedings involved an extended time period of well over two years. But it must also be recognized that the State investigation in no way hampered plaintiff from filing a Complaint to preserve this action. *See Shandelman v. Schuman,* 92 F.Supp. 334, 336 (D.C.Pa.1950). Waiting due to faith in the adequacy of one of two independent remedies is no excuse to justify tolling the statute of limitations of the other. *See Stansell v. Sherwin-Williams Co.,* 404 F.Supp. 696, 701 (N.D.Ga.1975). In any event, a period of more than six months elapsed between the termination of State proceedings and the filing of this action. Plaintiff, with reasonable diligence, could easily have submitted a timely Complaint,

---

1. This provision takes effect with respect to conciliations begun by the Secretary after April 6, 1978, the date of enactment of the ADEA amendments. Such tolling will begin when the Labor Department states, in a letter to the prospective defendant, that it is prepared to begin conciliation.

assuming that he could successfully demonstrate a willful violation.

It is clear from the case law that plaintiff's cause of action began to accrue from the time of his actual discharge on February 21, 1975. Since plaintiff's Complaint was not submitted within the statutory time period, and the equitable considerations are not of sufficient weight to justify tolling of the limitation period, the Court is compelled to grant defendant's motion to dismiss plaintiff's suit under the ADEA.

The above holding precludes the necessity to examine defendant's additional grounds for dismissal or summary judgment as to plaintiff's ADEA suit. However, since defendant has brought into issue the circumstances surrounding plaintiff's filing of notice of intent to sue,[2] the Court would like to point out that even if the date of filing had been properly alleged in plaintiff's Complaint, it appears that plaintiff has also missed the statutory deadline for such filing. Since New York has legislation prohibiting age discrimination in employment, and establishing State authority to provide relief from such discrimination,[3] this case falls within 29 U.S.C. § 626(d)(2) so that plaintiff would be required to file notice of intent to sue within 300 days after the alleged unlawful practice occurred.[4]

Plaintiff, in his memorandum in opposition to defendant's motion for summary judgment and dismissal, states that he filed the requisite notice on December 24, 1975. Since the unlawful practice here in question was the termination of plaintiff's job on February 21, 1975, the filing of notice took place 306 days after the critical event.

There is significant authority for the proposition that the filing of notice under § 626(d) is a jurisdictional prerequisite to the right to file an ADEA suit. *Ott v. Midland-Ross Co., supra.* Yet, many of the cases labeling the filing requirement as "jurisdictional" indicate that the requirement may nevertheless be subject to equitable modification. It is made clear, however, that such modification would be an exceptional step which must be clearly warranted by the equities. *Davis v. R.J.R. Foods, Inc., supra; Quina v. Owens-Corning Fiberglass Corp.,* 575 F.2d 1115, (5th Cir. 1978); *Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir. 1976).

The Supreme Court has yet to direct its attention to this question; however, in an analogous situation under Title VII, involving an extension of the federal limitation period where a corresponding State remedy existed for the unlawful employment practice, the Supreme Court held that Congress had firmly limited, by express statutory provision, the maximum possible extension of the limitation period. *Int'l Union of Electrical, Radio & Machine Workers, AFL-CIO Local 790 v. Robbins A. Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). Relying on the above holding, the court in *Black v. Hunter Packaging Co.,* 427 F.Supp. 152 (E.D.Ill., 1977), a case under the ADEA, refused to allow equitable modification of the 180-day period during which notice must be filed.

---

**2.** Defendant asserts that plaintiff failed to comply with the requirements of 29 U.S.C. § 626(d) only by failing to allege in his Complaint the date of filing of notice of intent to sue with the Secretary of Labor. Under Fed.R.Civ.P. 9(f), averments of time are material to test the sufficiency of a pleading. However, a simple defect of this type, even if jurisdictional, is easily cured by amendment as expressly provided in 28 U.S.C. § 1653. *Markert v. Swift & Co.,* 173 F.2d 517 (2d Cir. 1949); 3 *Moore's Federal Practice* ¶ 15.07(2), ¶ 15.0 (2d ed. 1974).

**3.** N.Y. Executive Law §§ 296–298 (McKinney's).

**4.** 29 U.S.C. § 626(d) reads in relevant part:
No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

The 1978 Amendments to the ADEA clarify the ambiguities which have developed as a result of varying interpretations of the notice requirement. The insistence on formal notice of intent to sue will be modified to a "charge" requirement, satisfied by the filing of a written statement which identifies the potential defendant and generally describes the action to be discriminatory. The time limitations remain the same. The Conference Committee report, H.R.Rep.No. 95–950, 95th Cong., 2d Sess. 12 (1978), however, makes it clear that the "charge" requirement will not be a jurisdictional prerequisite to maintaining an action and that equitable modification of the time period will be available.

Plaintiff does not allege any communication with the Secretary of Labor prior to the notice of intent to sue which was filed on December 24, 1975, which could be construed as giving notice prior to that date. Additionally, plaintiff filed his Complaint with the New York State Division of Human Rights soon after his termination, so it cannot be said that the allegedly discriminatory nature of plaintiff's discharge was not discovered until it was too late to file timely notice.

 It is the Court's feeling that, under the circumstances of the present case, plaintiff would be unable to assert a sufficient equitable basis for tolling the statutory notice period. The Court recognizes that to insist upon strict compliance with the technicalities of § 626(d) could in some cases frustrate the intent of Congress in passing such remedial legislation; but where plaintiff must make a strong showing of circumstances warranting equitable extension of the basic statutory notice period, the fact that Congress has already granted an extension of one hundred and twenty days where there is applicable state law would appear to necessitate an even stronger showing in order to excuse plaintiff's noncompliance. Even if plaintiff's ADEA action were not barred by the statute of limitations, there is grave doubt that he could adequately assert compliance with the statutory prerequisite of § 626(d).

 Plaintiff has also asserted a cause of action under 42 U.S.C. § 1983. It is well established that New York CPLR § 214(2) governs actions brought in Federal District Court in New York under § 1983. *Montagna v. O'Hagan,* 402 F.Supp. 178 (E.D.N.Y.) aff'd w/o op., 538 F.2d 311 (2d Cir. 1975). New York CPLR § 214(2) establishes a three-year limitation period for liability based on a statute. As previously discussed concerning plaintiff's suit under the ADEA, the three-year period must be measured from plaintiff's job termination on February 21, 1975. Consequently, it is this Court's determination that plaintiff's suit is equally untimely for purposes of his action under 42 U.S.C. § 1983.

Additionally, plaintiff has failed to allege in his Complaint that Alcan was acting under color of state law in its allegedly discriminatory pattern of behavior so as to invoke the protection of § 1983. *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, mod. on other grounds, 520 F.2d 409 (2d Cir. 1975). In view of such holdings as *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), it is doubtful that sufficient nexus exists between the State and the challenged action of defendant Alcan to support a state action claim. However, under the circumstances, there is no need to further explore this issue since the action is barred by plaintiff's failure to file a timely Complaint.

Accordingly, plaintiff's Complaint is dismissed as to both his claim under 42 U.S.C. § 1983 and his claim under the Age Discrimination in Employment Act.

It is so ordered.