Roscoe Franklin **FULTON**, Plaintiff,

v.

**NCR CORPORATION**, Defendant.

Civ. A. No. 78–0116(D).

United States District Court,
W. D. Virginia,
Danville Division.

June 13, 1979.

Michael W. Smith, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for defendant.

## MEMORANDUM OPINION

DALTON, District Judge.

This action is brought under the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. § 621 et seq. Plaintiff, Roscoe Franklin Fulton, had been employed by defendant NCR Corporation in its Danville, Virginia office. NCR terminated Fulton's employment on May 5, 1975. Fulton was sixty years of age at the time. On the same day, NCR also discharged two other Danville employees, George C. Coates and Woodie L. Smith. They too filed suit in this court under the ADEA. Judge Williams found that Coates and Smith had been the victims of discrimination by NCR in violation of the Act, and, in 1977, awarded those plaintiffs substantial damages. *See Coates v. National Cash Register Company*, 433 F.Supp. 655 (W.D. Va.1977).

Plaintiff Fulton, however, did not proceed with the dispatch of his compatriots. He first contacted his lawyer, the same attorney who had ably represented Smith and Coates, through his (Fulton's) wife in February of 1978. Fulton, through his attorney, first gave formal written notice to the Secretary of Labor of his intent to sue NCR for illegal age discrimination on March 13, 1978. He filed suit in this court on August 23, 1978.

Defendant has moved to dismiss this action on two grounds: First, plaintiff failed to file his notice of intent to sue NCR with the Department of Labor within 180 days of the alleged unlawful practice (Fulton's discharge), thereby failing to comply with the requirements of Section 7(d) of the ADEA, 29 U.S.C. § 626(d), for bringing suit under that statute. Second, plaintiff failed to file his complaint in this court until more than three years after his cause of action accrued. Thus, defendant argues, this action is barred by the applicable statute of limitations as set out in Section 7(e) of the ADEA

Gary L. Bengston, Danville, Va., for plaintiff.

and Section 6 of the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 626(e), 255.

## I. Timeliness of Notice to Secretary of Labor.

 As first enacted, Section 7(d) of the ADEA provided that,

"No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, . . . "[1]

Plaintiff concedes that he did not file such a formal notice until long after the 180 day period had expired. Nevertheless, he asserts that he gave informal, oral notice to the Secretary that he had been discriminatorily fired within 180 days of his separation from NCR, and that this "notice" suffices to comply with the law.

Plaintiff appeals to the Age Discrimination in Employment Act Amendments of 1978 [ADEAA], Pub.L. 95–256, 92 Stat. 189, which was enacted April 6, 1978. Section 4(b) of the ADEAA amended the applicable portion of Section 7(d) to read as follows:

"No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; . . . "

Section 4(b) also provides that the above amendment "shall take effect with respect to civil actions brought after the date of enactment of [the ADEAA]." 92 Stat. 190–91. Since this civil action was not brought until August 23, 1978, the amended statute applies to this case by its own terms, notwithstanding that plaintiff's grievance, his oral "notice" and even his formal written notice all preceded the enactment of the amendment.

Nevertheless, this amendment will not rescue plaintiff from his dilemma. Prior to the enactment of the 1978 Amendments, there may have been some question whether oral notice of an intent to sue would satisfy the statutory requirements. See *Reich v. Dow Badische Co.*, 575 F.2d 363 (2d Cir. 1978), particularly the dissenting opinion of Judge Feinberg at 374. Any doubt about the necessity of a written charge should be dispensed by the enactment of the Amendments, however. The Conference Committee approving these Amendments reported,

This change in language is not intended to alter the basic purpose of the notice requirement, which is to provide the Department with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation. Therefore, the conferees intend that the "charge" requirement will be satisfied by the *filing of a written statement* which identifies the potential defendant and · generally describes the action believed to be discriminatory.

House Conf. Report No. 95–950, March 14, 1978, p. 12, 1978 U.S.Code Cong. and Admin.News, p. 534 (emphasis added).

Congress intended by this amendment to remove from discriminatees the burden placed by some courts[2] of using the magic language "I intend to sue," when filing notice of his grievance with the Secretary of Labor. Nevertheless, Congress did not intend to relieve complainants of the burden of filing a written notice. The wisdom of this requirement is proved by the evidence proffered in the present case. Plain-

---

1. This section goes on to provide a longer period for filing notice in cases of an alleged unlawful practice in a State which has a law prohibiting employment discrimination because of age. Section 14, ADEA, 29 U.S.C. § 633. Virginia does not have such a law.

2. *See, e.g., Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1259 (10th Cir. 1976), affirmed by an equally divided court, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270, *reh. denied* 434 U.S. 1042, 98 S.Ct. 785, 54 L.Ed.2d 792; *Powell v. Southwestern Bell Tel. Co.*, 494 F.2d 485, 489 (5th Cir. 1974).

tiff Fulton testified by deposition that he first communicated with Mr. Stanley L. Johnson of the Department of Labor office in Cincinnati, Ohio by means of answers to a written questionnaire sent by Johnson to former NCR employees and received by him, Fulton states to the best of his recollection, in the summer or fall of 1975. (Tr. 5). In completing the questionnaire Fulton described the circumstances of his release from NCR: that NCR had reduced his sales territory from seven counties to two, had stopped sending Fulton demonstration equipment, had refused to train him in the use of modern electronic equipment, took away from Fulton his largest buyers, raised his sales quota from $10,000/month to $17,000/month and then fired him for failing to meet this quota.[3] Fulton concluded his response with the rhetorical question, "Do you think they fired me because I didn't do the job or because of my age?" After making this response, Fulton states that his wife called Johnson "about every three or four weeks to see what he could do," but that he himself did not talk with Johnson until early in 1977. (Tr. 13–14).

Johnson, however, in answer to joint interrogatories, states that to the best of his ability to recollect, he did not send a survey questionnaire to Fulton until December of 1976, along with several questionnaires sent to employees who had been terminated from NCR's Marketing Division. He recalls speaking with Mrs. Fulton by phone in early 1977 and sending her various pamphlets having to do with the ADEA. Johnson recalls that Mrs. Fulton was advised that the Wage and Hour Division of the Labor Department was investigating NCR to determine if there was a pattern and practice of Age Discrimination in the Marketing Division. She was also advised, he recalls, that her husband could file a complaint if he wished, but that Fulton never lodged a complaint against NCR and, consequently, Johnson did not notify NCR that Fulton

had complained. Neither party has submitted a copy of the completed questionnaire, but copies of the Fulton's long distance telephone charges supplied by plaintiff do not reveal a call to Cincinnati until January of 1977. A total of seven calls were made to Johnson between then and February of 1978.

This evidence reveals that because of the informal nature of the correspondence between the Fultons and Johnson, the one written reply to the Labor Department's form questionnaire and seven phone calls, NCR was never timely notified that Fulton was alleging a claim.[4] "[This] notice had neither the content nor the clarity of expressed purpose needed to fulfill its statutory office. If so uncertain a notice could be thought sufficient, the result could often be obscure protractions and confusion in proceedings that are intended to be quickly prosecuted, while restoration to employment with minimal derangement of the affairs of employer and employee can still be seen as possible." *Reich v. Dow Badische Co., supra,* at 368. Furthermore, because no written charge exists there is no way to substantiate Fulton's claim that he gave any notice at all within 180 days of his release on May 5, 1975. What evidence there is would place Fulton's response to the questionnaire more than one year after the expiration of the 180 day period.

The court must conclude that plaintiff failed to comply with the 180 day notice requirements of Section 7(d), in either its original or amended forms. Therefore, unless plaintiff can show reasons for which 180 day period should be held tolled, defendant's motion to dismiss on this ground must be granted. The issue of equitable tolling is addressed later in this opinion.

II. Timeliness of Filing Suit in This Court.

■ The combined provisions of Title 29, U.S.C. §§ 626(e) and 255(a) prescribe a stat-

---

3. Compare this with Judge Williams' findings of fact in Coates' and Smith's case, 433 F.Supp., at 658–60.

4. Neither did Fulton ever contact the Roanoke, Virginia office of the Wage and Hour Division, the proper office to attempt the conciliation required by the second paragraph of ADEA's Section 7(d), 29 U.S.C. § 626(d).

ute of limitations of two years after accrual of a cause of action under the ADEA, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

Section 4(c)(1) of the ADEAA provided an amendment to these provisions as well. A new paragraph (2) was added to Section 7(e) of the ADEA, providing,

> (2) For the period during which the Secretary is attempting to effect voluntary compliance with requirements of this Act through informal methods of conciliation, conference, and persuasion pursuant to subsection (b), the statute of limitations as provided in section 6 of the Portal-to-Portal Act of 1947 [29 U.S.C. § 255] shall be tolled, but in no event for a period in excess of one year.

Section 4(c)(2) of the ADEAA states that the foregoing paragraph "shall take effect with respect to conciliations commenced by the Secretary of Labor after [April 6, 1978]."

This amendment does not affect this action. First, the "informal methods of conciliation, conference, and persuasion pursuant to subsection (b)" refer to those attempts required to be taken by the Secretary pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b) to eliminate alleged discriminatory practices before *the Secretary himself* may institute proceedings to enforce the ADEA under 29 U.S.C. §§ 626(b) & 216(c). As the Conference Committee reported:

> The Senate amendment amends section 7(e) of the act to provide that the statute of limitations as provided in section 6 of the Portal-to-Portal Act of 1947 shall be tolled (for a period not exceeding 2 years) during the period in which the Secretary of Labor is attempting to effect voluntary compliance pursuant to section 7(b). This amendment does not apply to conciliation required by section 7(d).

House Conf. Report No. 95–950, *supra*, p. 13, 1978 U.S.Code Cong. and Admin.News, p. 534.

The court does not necessarily read this limitation as saying that a period of Section 7(b) conciliation attempts will never work to toll the period of limitations for bringing private actions under Section 7(c) (for which the prior period of conciliation attempts under Section 7(d) is required). It may mean only that Section 7(d) conciliations will work to toll the limitations period for *no* ADEA action, while Section 7(b) conciliations may work to toll the limitations period for *any* ADEA suit, whether brought under Section 7(b) or Section 7(c). Normally, Section 7(b) conciliations would not be expected to end in Section 7(c) suits, since a failure to reach agreement would usually result in an action brought by the Secretary himself, which would terminate the right of aggrieved individuals to bring an action under Section 7(c). 29 U.S.C. § 626(c) *proviso*. It remains totally unclear to the court why the Secretary did not elect to bring a pattern or practice suit against NCR for its employment policies in its Marketing Division. In any event, the new Section 7(e)(2) tolling provision cannot aid the present plaintiff in this action. The Section 7(b) conciliation efforts commenced by the Secretary between NCR and its Marketing Division employees clearly commenced well before April 6, 1978, falling before the effective date of the tolling provision amendment. Alternatively, any efforts at conciliation which the Secretary may have undertaken after April 6, 1978, as a result of Fulton's filing notice of intent to sue on March 13, 1978, would have been a Section 7(d) brand of conciliation effort, to which Section 7(e)(2) does not apply.

It is agreed by the parties that the statute of limitations began running on Fulton's claim on May 5, 1975, the date his employment was terminated, even though Fulton may have continued to receive company benefits after that date.[5] *See Thomas v. Blue Cross Blue Shield of North Carolina*, 449 F.Supp. 1021 (M.D.N.C.1978); *Moses v.*

---

5. It appears that Fulton delayed pursuing his age discrimination grievance upon the hope that he would become eligible for increased company pension benefits. (Tr. 11–12).

*Falstaff Brewing Corp.*, 525 F.2d 92 (8th Cir. 1975); *Jackson v. Alcan Sheet & Plate*, 462 F.Supp. 82 (N.D.N.Y.1978). Since Fulton did not file his complaint until August 28, 1978, more than three years and three months later, it is clear that absent some equitable reason for tolling the limitations periods plaintiff's claim is now barred.

### III. Tolling the Statutes.

 Prior to the enactment of the 1978 Amendments, the Federal Circuit Courts were involved in a lively debate over whether the 180 day notice requirement of Section 7(d) of the ADEA, 29 U.S.C. § 626(d) was "jurisdictional." *Cf. Edwards v. Kaiser Aluminum & Chem. Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975) with *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3rd Cir. 1978). The Supreme Court even decided to enter the fray in the case of *Dartt v. Shell Oil Co., supra*, but apparently could not agree to decide the point since the case was left intact by an equally divided court. 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270. This dispute over judicial nomenclature seems beguilingly esoteric until one realizes that judges use or refuse to use the appellation "jurisdictional" for the 180 day requirement commensurate with their feeling and judgment whether the requirement is one which may or should be tolled for equitable considerations. Congress spoke to the matter directly in amending Section 7(b) of the ADEA through Section 4(b) of the ADEAA. The report of that legislation states,

> The conferees agree that the "charge" requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this Act. . . . (citations omitted).

House Conf. Report 95–950, *supra*, p. 12, 1978 U.S.Code Cong. and Admin.News, p. 534. *See also Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir. 1978).

As discussed above, the amended Section 7(d) is applicable to this action and the Congressional interpretation must be considered controlling upon the non-"jurisdictional" nature of the 180 day filing requirement.

The redoubtable defendant, however, would have the court resurrect this kind of categorical talisman in the slightly different context of the Section 7(e) statute of limitations. It brings the court's attention to the case of *Jackson v. Alcan Sheet & Plate, supra*, wherein on p. 87 Judge Munson states,

> . . . [C]onsideration must also be given to the fact that this [the ADEA] is a statutory cause of action not existing under prior law. When such a legislative enactment fixes the time in which action may be commenced, commencing of action within the time specified is an indispensable condition of liability, and upon expiration of the time established, both the right and the remedy are destroyed. *Chambliss v. Coca-Cola Bottling Corp.*, 274 F.Supp. 401 (E.D.Tenn.1967), *aff'd*, 414 F.2d 256 (6th Cir. 1969), *cert. denied*, 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 . . . (1970).

Conceding for the sake of argument the point defendant seeks to make, it does not necessarily preclude the late filing plaintiff from obtaining relief. *See Ott v. Midland-Ross Corporation*, 523 F.2d 1367 (6th Cir. 1975) (defendant in ADEA action may be estopped from pleading statute of limitations for fraudulently inducing plaintiff not to assert his rights).

Happily, this court need not decide whether the principles of equitable tolling may be applied to the Section 7(e) limitations because plaintiff has shown no factors which would call for the tolling of either the Section 7(d) or 7(e) time requirements. *Cf. Quina v. Owens-Corning Fiberglas Corp.*, 575 F.2d 1115 (5th Cir. 1978).

"[I]t is the established rule that exceptions to a statute of limitations will not be implied, . . . . Nevertheless, most courts recognize a limited class of exceptions arising from necessity, as in the case of inability to bring suit or to exercise one's remedy, or the defendant's fraudulent concealment of a cause of action against

him. In such instances of necessity, the running of the statute of limitations may be suspended even though no exceptions or causes of suspension are mentioned in the statute itself." 51 Am.Jur.2d, Limitations of Actions, § 139, p. 710 (1970).

A plaintiff's simple ignorance of his rights under the ADEA is insufficient to toll the time limitations of § 7. *Quina v. Owens-Corning Fiberglas Corp., supra; Thomas v. Blue Cross Blue Shield of North Carolina, supra.* But if an employer has failed to post the notices required by § 8 of the ADEA, 29 U.S.C. § 627, which inform employees of their rights under the Act, and if as a consequence an employee is left ignorant of those rights, then the time limitations of the § 7 filing requirements may be tolled until such time as the employee actually learns of his rights or retains an attorney. *Kephart v. Institute of Gas Technology,* 581 F.2d 1287 (7th Cir. 1978); *Quina v. Owens-Corning Fiberglas Corp., supra; Skoglund v. Singer Co.,* 403 F.Supp. 797 (D.N.H.1975). *But see, Brohl v. Singer Co.,* 407 F.Supp. 936 (M.D.Fla.1976). For example, in *Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761 (5th Cir. 1977), plaintiff Charlier worked out of his own home and visited his employer's office only three times in 19½ years. The Court of Appeals held that notice of ADEA rights posted in that office was inadequate to fulfill the employer's duty to inform plaintiff of his rights under the Act. Consequently it ordered the case remanded to determine "when either plaintiff acquired actual knowledge or 'had the "means of knowledge" of his ADEA rights . . . .' " 556 F.2d at 765.

In the present case, plaintiff Fulton worked out of NCR's Danville office. He was aware there was a bulletin board at the back of the office where were posted records of the offices' sales and earnings. (Tr. 30). Fulton states that he went back there occasionally to get a cup of coffee or drink of water and sometimes looked at the sales records, but that he never saw posted the required ADEA notice. On the other hand, Fulton states that he never noticed postings of Wage and Hour Law requirements or other Department of Labor circulars there,

either. He states he doesn't believe such materials had been posted, but admits that it's possible they may have been. (Tr. 32). He states that he simply didn't "go back there. That wasn't part of my job." (Tr. 31). The mere failure of an employee to read a notice which has been properly posted is not grounds for tolling the statute. *Bonham v. Dresser Industries, Inc., supra,* at 193, n.7. Since it doesn't appear that Fulton would have been aware of the notice if properly posted, its purported absence could not have worked to deprive him of knowledge of his rights and is no ground for equitable tolling.

The § 7 time requirements will be tolled for a plaintiff who was not aware that his age was a basis for his discharge until such time as he gains this knowledge. *Quina v. Owens-Corning Fiberglas Corp., supra; Thomas v. E. I. DuPont de Nemours & Co.,* 574 F.2d 1324 (5th Cir. 1978). Fulton, however, was convinced from the beginning that his firing was unjust and on account of his age (Tr. 10), even writing to the President of NCR about his situation a week after his release. (Tr. 24–25).

Where an employee has been misled as to the requirements of timely filing by his attorney or by the Department of Labor, there may be grounds for equitable tolling. *Quina v. Owens-Corning Fiberglas Corp., supra; Thomas v. E. I. DuPont de Nemours & Co., supra; Jackson v. Alcan Sheet & Plate, supra; Russell v. Curtin Matheson Scientific, Inc.,* 17 FEP Cases 845 (S.D.Tex. 4–28–78); *Abbott v. Moore Business Forms, Inc.,* 439 F.Supp. 643 (D.N.H.1977). Fulton, however, did not contact a lawyer until February of 1978 and apparently did not come into contact with the Labor Department before December of 1976, both events coming long after the 180 day period for filing a § 7(d) notice had expired. Therefore, it is impossible that either could have misled him to his detriment, even if, as he claims, Stanley Johnson led him to believe that he would not need to take any action before the Labor Department concluded its investigation. (Tr. 13–15, 17–21).

Plaintiff may have grounds for tolling the limitations periods if he can show that NCR fraudulently induced him to delay filing his ADEA complaint. *Jackson v. Alcan Sheet & Plate, supra,* at 87. For example, in *Ott v. Midland-Ross Corporation, supra,* "Ott alleged that while he was awaiting a job assignment the corporation willfully, maliciously and falsely represented that if he would forego his rights under the Act, it would hire him as a consultant at least ten days each month and that he would make more money under such an arrangement. Relying on the representations, and believing them to be true, Ott accepted early retirement and entered into the consulting agreement . . . ." 523 F.2d, at 1368. The Court of Appeals for the Sixth Circuit considered the facts pleaded, if true, sufficient to estop the defendant from asserting the statute of limitations. *Ibid.* at 1370. Fulton claims that he delayed filing his ADEA claim because NCR led him to believe that he would get a better pension than that he actually received. Fulton admits, however, that he never talked with any NCR official about suing them, that they never told him not to sue or that he couldn't sue. (Tr. 24, 37). As to any legitimate expectation of receiving an increased pension, Fulton concedes that his pension negotiations with NCR "just more or less petered out. It got to the point where it wasn't any use calling any more and we just let it go at that." (Tr. 37–38).

The strongest precedent in plaintiff's favor is *Catlett v. Owens-Illinois, Inc.,* 454 F.Supp. 358 (W.D.Mo.1978). The court there held that the 180 day notice requirement of § 7(d) would be tolled where 1) both the employer and the Labor Department were on notice shortly after plaintiff's firing that plaintiff believed age discrimination existed, 2) plaintiff's discharge was investigated "with the same vigor as were the claims" of other fired employees, 3) plaintiff had no actual knowledge of the 180 day rule and 4) the employer had suffered no legal prejudice by the delay in filing a formal complaint. 454 F.Supp. at 363. There are some crucial differences between that case and this, however.

Plaintiff's wife in Catlett phoned a Labor Department official *a few days* after her husband's firing and told the official that they believed age was involved in the discharge. That official did not inform the wife of the 180 day requirement and actually discouraged plaintiff's wife from believing they had an ADEA claim. 454 F.Supp. at 360. Fulton and his wife, as noted before, did not contact anyone in the Department of Labor until long after he was fired. When Mr. Johnson of the Department was contacted, he did not feel that the Fultons had made a formal complaint and no investigation of Fulton's particular case was made. Successful plaintiffs Coates and Smith, by contrast, filed their notices of intent to sue in September of 1975. Fulton was perfectly aware of the progress of their suit, but elected to pursue an increased pension instead. (Tr. 35–36).

On the basis of the foregoing evidence and authority, the court must conclude that the equities do not lie with plaintiff, and that defendant's motions to dismiss must be granted. ORDER in accordance with opinion.