**Gilbert A. SPROTT, Plaintiff,**

v.

**AVON PRODUCTS, INC., Defendant.**

**No. 81 Civ. 2589 (RO).**

United States District Court,
S.D. New York.

Oct. 1, 1984.

Ted M. Rosen, Great Neck, N.Y., for plaintiff.

Breed, Abbott & Morgan, New York City, for defendant; Eric M. Nelson, Noah Nunberg, New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff, a former managerial employee of defendant, alleges violations of the Age Discrimination in Employment Act, the New York State Human Rights Law, tortious, wrongful and abusive discharge and breach of contract. Defendant has, by summary judgment and otherwise, moved for dismissal of all claims.

Plaintiff Gilbert Sprott was hired as Chief Control Chemist by defendant Avon Products, Inc. in 1960. Sprott left his prior employment to obtain a manufacturing management position which he perceived offered greater advancement possibilities. Furthermore, he was attracted to the advertised "family attitude" heavily stressed

as an attractive aspect of employment at Avon and was confident he could there build a secure future. Avon clearly encourages longevity in employment which was expressed to Sprott by various officers many times and its employment manual reads:

RECOGNITION OF SERVICE:

The company recognizes and appreciates long and faithful service by its associates, and realizes the value of skill, knowledge and judgment gained through years of experience. Long service contributes to an associate's standing in the company and is appropriately recognized.

Over the years, Sprott advanced in the company to the point where, in 1978, Sprott was promoted from a position in Research and Development in New York to general manager of Avon's new manufacturing facility in Mansfield, Massachusetts. Needless to say, this was expected to be long term and Sprott was advised to sell his house in New Jersey and move his family. However, in less than a year, on April 30, 1979, Sprott was summoned to New York and informed that he was being removed from his managerial position. Sprott states that this came as a shock to him, and that he had no warning that his work was being viewed with concern. Contemporaneous memoranda by Sprott's supervisors, on the other hand, paint a picture of major problems created by Sprott's indecisiveness as a manager—a picture which, if true, was clearly foreshadowed by a number of Sprott's earlier annual written management appraisals. In any event, after fruitless consideration of other possible placements in Avon, it was suggested that he take early retirement, which could be done at 55. At the time of these events, Sprott was 54. The following month, May, 1979, Sprott spoke with an Equal Employment Opportunity Commission attorney in Washington to obtain basic information about age discrimination laws and began reading articles in newspapers and scientific and

business journals on that topic. Sprott contacted a New York attorney for advice in litigation options. The lawyer continued to advise Sprott on his litigation strategy until Sprott hired local counsel to pursue his claim in court.

In any event, in June 1979, two months after his removal as a manager, Howard Johnson, an Avon vice president wrote Sprott, describing Avon's intention to create a sinecure for him in New York which, having no responsibilities or duties, would give Sprott full time to search for employment elsewhere. After conferring with his attorney, Sprott accepted this and agreed with some reservations and dissatisfactions to receive retirement benefits commencing May 31, 1980.

In response to Sprott's reservations and dissatisfactions, in October and November 1979, Johnson sent Sprott further letters reformulating some provisions of the June letter retaining, however, the provision of employment in name only followed by early retirement. Sprott forwarded these letters to his lawyer, along with a note, dated October 19, 1979, reading:

We are close to the 180 days limit to bring private suit (about Nov. 1). Can an extension of that period be obtained? If yes, could you do so? Should I bring suit now or wait further?"

Subsequently, Sprott and his lawyer conversed by telephone. Sprott says he was informed by his lawyer that the limitations period in which a charge had to be filed would be measured from Sprott's last day of employment, May 31, 1980. His lawyer also wrote him contemporaneously

I would reiterate the fact that you have not been terminated nor have you left Avon, and your termination or your final date will be, if necessary, May 31, 1980. That is, of course, to protect yourself against the statute of limitation problem we discussed.[1]

Sprott retired from Avon on May 31, 1980. Some time afterward he retained

---

1. What this terminology meant to Sprott, or what his lawyer was told as the basis of this   advice is unclear.

litigation counsel and filed a complaint of age discrimination with the EEOC and the New York State Dept. of Human Rights on August 13, 1980.

Sprott's principal claim is pursuant to the Age Discrimination in Employment Act. 29 U.S.C. § 621 *et seq.* Avon argues that this claim is time-barred because Sprott failed to file his complaint with the EEOC within 300 days of the alleged unlawful discrimination, as required by 29 U.S.C. § 626(d)(2).[2]

The parties agree, and it is now pronounced in Supreme Court rulings in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), that the limitation period of 300 days begins to run when the employee is *notified* of the allegedly discriminatory employment decision.[3] Under this rule, Sprott's claim is time-barred, for he knew in May 1979 that he would be terminated a year later and he immediately suspected age discrimination, as evidenced by his research and correspondence with an EEOC attorney and his own attorney. Sprott, however, urges two theories to avoid his claim being barred.. First, he contends that because he filed his complaint prior to the said Supreme Court rulings in *Delaware State College* and *Chardon*,[4] these rulings should not be applied "retroactively" as to him. Alternatively, he contends that equitable tolling of the limitations period is appropriate here.

As to retroactive application of a Supreme Court pronouncement, the Court in *Chevron Oil v. Huson*, 404 U.S. 97, 106–7, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) stated:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision .of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." (Citations omitted.)

Sprott urges that an analysis of the facts under the *Chevron* factors mandates nonretroactivity of the restrictive rule of *Delaware State College*. I note that the Court of Appeals in the First Circuit rejected a similar argument in *Fernandez v. Chardon*, 681 F.2d 42 (1982) on an analysis that I conclude applies here. Thus, to decline to apply a Supreme Court pronouncement to a

**2.** Section 626(d) states in part:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Section 633(b) applies to cases that occur in states that prohibit age discrimination in employment. New York is a § 633(b) state. *Reich v. Dow Badische Co.*, 575 F.2d 363, 370 (2d Cir.),

*cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978).

**3.** Although neither *Delaware State College* nor *Chardon* was an action under ADEA (the former was an action under Title VII and 42 U.S.C. § 1981, the latter under 42 U.S.C. § 1983), .it appears settled that the same rule applies to ADEA claims. *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982); *Leite v. Kennecott Copper Corp.,* 558 F.Supp. 1170 (D.Mass.1983), *Pfister v. Allied Corp.,* 539 F.Supp. 224, 226 (S.D.N.Y.1982).

**4.** Sprott filed with the EEOC on August 13, 1980. *Delaware State College*, came down on December 15, 1980, *Chardon* on November 2, 1981.

similar pre-existing fact situation, that ruling must have overruled clear past precedent or must have been an issue of first impression. Neither of these criteria are met here. No uniform clear precedent existed in the Second Circuit. At best the Court of Appeals had two lines of cases turning on the last day *services* were performed which triggered the commencement of the period of limitation.

Thus, *Egelston v. State University College at Geneseo*, 535 F.2d 752, 755 (2d Cir.1976) and *Noble v. University of Rochester*, 535 F.2d 756 (2d Cir.1976), decided together, had, as stated in Egelston, the following rationale:

> Appellant's discharge was consummated only when she left [her employer, and] ... [she] alleges that the discrimination against her was not an isolated act, but rather constituted a part of her [employer's] continuing policy to deny women access to its upper echelons.[5]

535 F.2d at 755.

On the other hand, *Davis v. R.J.R. Foods, Inc.*, 420 F.Supp. 930 (S.D.N.Y. 1976), affirmed without published opinion, 556 F.2d 555 (2nd Cir.1977), and decided after *Egelston* and *Noble*, held that the period of limitation began with the last day of service following the notification of termination, even though salary and other benefits might continue to be paid for some time thereafter. The District Court's statement, thereafter affirmed, was:

> By his own admission [plaintiff's] services for [defendant] ceased on June 6, 1972. Although he continued to receive his salary and other benefits until Octo-

ber 6, this in no way prolongs his actual employment.... A logical extension of Davis' reasoning would equate the receipt of pension benefits by a retired employee with continuous employment. Such a proposition is patently without foundation.

420 F.Supp. at 931, fn. 1.[6]

To similar effect at the time of Sprott's filing was *Jackson v. Alcan Sheet and Plate*, 462 F.Supp. 82, 85 (N.D.N.Y.1978):

> Cases decided under the ADEA have been consistent in holding that the cause of action accrues on the date when the employer violates the employee's rights by discharging him on the basis of age. The date of discharge is generally determined to be the date upon which the employee ceases to perform services for the employer. *Davis v. R.J.R. Foods, Inc.*, 420 F.Supp. 930, 931 n. 1 (S.D.N.Y. 1976), aff'd w/o op. 556 F.2d 555 (2d Cir.1977) ...

There is no question here that Sprott's facts equate with those of *Davis* and *Jackson*, supra, and thus even under that rule at that time, Sprott's filing was untimely.

■ Thus, Sprott having failed to satisfy the first requirement of the *Chevron* analysis, I may not deny "retroactive" application of *Delaware State College*.[7]

■ Sprott's alternative request is for an equitable tolling of the limitations period. Sprott's factual support for this is that he was relying on the advice of his counsel, but this fact mandates the opposite conclusion, even assuming he was given and relied on erroneous advice. *Downie v. Elec-*

---

**5.** Thus, in *Fernandez v. Chardon*, 681 F.2d 42, 52 (1st Cir.1982), the Court of Appeals, on remand from the Supreme Court, ruled against plaintiffs who argued that *Delaware State* should not be applied retroactively in an action under 42 U.S.C. § 1983. The Court said, "[O]nly one [case] offers square support for plaintiffs' rule." The one case was *Egelston v. State University College at Geneseo, infra.*

The First Circuit nevertheless continued, "We cannot say that [*Delaware State College*] established a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression." 681 F.2d at 52.

**6.** *Davis* is cited for support by the Third Circuit in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.1977), decided two years before Sprott's termination. *Bonham* held at 191:

> [W]here unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage.

**7.** See *Kremer v. Chemical Construction Corp.*, 623 F.2d 786, at 789 (2d Cir.1980).

tric Boat Division, 504 F.Supp. 1082, 1086–1087 (D.C.Conn.1980).

Although ADEA is a remedial humanitarian statute and should be construed liberally, *Dartt v. Shell Oil*, 539 F.2d 1256 (10th Cir.1976) *aff'd* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), the argument is otherwise without support on the law. *Edwards v. Kaiser*, 515 F.2d 1195 (5th Cir. 1975); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 110–111 (2d Cir. 1978).

I further note in *Smith* that the Second Circuit has indicated that the tolling of time limits in discrimination suits is appropriate only in very strict circumstances. Referring to the Supreme Court's decision in *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Court of Appeals stated at 109:

> The [Supreme] Court implied that tolling might be appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.

Finally, I observe in connection with the equitable argument here made that Sprott did not file his EEOC charge until—having concluded fourteen months of negotiations—he had obtained some $200,000 in severance and retirement benefits. Given the foregoing, equity is not available to permit tolling. Summary judgment is therefore granted on the ADEA claim for failure to timely comply with the filing requirement of 29 U.S.C. § 626(d)(2).

Sprott's complaint next asserts that his discharge was a breach of his employment contract entitling him to damages. Avon moves for summary judgment on this claim contending that Sprott was employed at will and thus could be discharged for any reason or no reason. Sprott has set forth facts from which he argues that he had an implied contract with Avon assuring job

security and limiting discharge to one for good cause.

This action being before me by reason of diversity of citizenship, I must look to New York law to determine the contract issues. *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). New York law has always been, and *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) 461 N.Y.S.2d at 235, 448 N.E.2d 86 has reaffirmed:

> ... our long-settled rule [is] that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason (see *Martin v. New York Life Ins. Co.*, 148 N.Y. 117, 42 N.E. 416; *Parker v. Borock*, 5 N.Y.2d 156, 182 N.Y. S.2d 577, 156 N.E.2d 297.

The case of *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), decided a year earlier, and upon which plaintiff relies, is neither an exception to *Murphy* nor do Sprott's facts fit within it. In *Weiner*, the employer's "Handbook on Personnel Policies and Procedures" had a statement which the Court deemed to be a part of the employment agreement. It read as follows:

> [t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed. However, if the welfare of the company indicates that dismissal is necessary, then that decision is arrived at and is carried out forthrightly.

457 N.Y.S.2d at 194, 443 N.E.2d 441. There is, however, no such contractual provision here, either expressed or implied.

■ The fact that Avon continuously encouraged, fostered, placed great importance upon and rewarded long, faithful, even lifetime service to the company does not change the employment contract from one terminable at the will of either party. Subsequent cases in New York's Appellate Division continue to be in accord with this

view. *O'Donnell v. Westchester Com. Serv. Council*, 96 A.D.2d 885, 466 N.Y.S.2d 41 (App.Div.1983), *Gould v. Community Health Plan of Suffolk, Inc.*, 99 A.D.2d 479, 470 N.Y.S.2d 415 (1984).

Also noting, as I do, that the Court in *Murphy*, supra, acknowledged a trend in many states to temper the strict rule but declined to join the trend, this Court has no choice but to accept and apply that rule. Summary judgment is accordingly granted to Avon and the contract claim is dismissed.

■ Avon also moves to dismiss Sprott's state claim for age discrimination asserted pursuant to New York Executive Law § 296. Its position is well taken for this claim is barred by the election of remedies provision contained in Executive Law § 297 which reads in pertinent part:

9. Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section or under section two hundred ninety-six-a.

(underscoring supplied)

Thus, one aggrieved must choose between judicial and agency fora for relief. *Emil v. Dewey*, 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980). Having chosen to file a complaint with the New York State Division of Human Rights in August, 1982, Sprott may not now assert his state claim.

Sprott alternatively suggests that this court stay the state law claim and allow him to seek dismissal on grounds of administrative convenience. The statute allows only one exception to the election of remedies. If the plaintiff has chosen to proceed before an agency, a Court can adjudicate the state cause of action only if "the division has dismissed the complaint on the grounds of administrative convenience." *See* Executive Law, supra. This exception, which courts have determined to be exclusive, is not present here. *Emil v. Dewey*, supra. Therefore summary judgment is granted and the cause of action dismissed.

Sprott next alleges a cause of action for tortious discharge. Aware that New York does not recognize such a claim, *see Murphy v. American Home Products Corp.*, supra, Sprott contends that either New Jersey or Massachusetts law governs and that those jurisdictions do permit such a claim.

■ In a diversity action, the choice of law is determined by the law of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York applies the "center of gravity" approach, *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) or the "interest analysis" approach, *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954) to determine which state has the greatest interest in the litigation. Under these, New York's interest overwhelmingly prevails. Sprott's New Jersey residence is the sole basis for New Jersey's interests. Sprott's final job with Avon for ten months in Mansfield is the basis for Massachusett's interest. Neither, however, equals New York's interest and thus fail to meet the "center of gravity" analysis.

Plaintiff spent most of his Avon career at its home office in New York, which is the state of its incorporation. When trouble began, plaintiff sought protection under New York law and availed himself of New

York unemployment benefits. Sprott was discharged from New York, and Sprott sought meetings and review of the decision in the New York Office. He chose to file his complaint against Avon with the New York State Division of Human Rights.

Given the foregoing, New York law as enumerated in *Murphy v. American Home Products Corp.*, supra, governs and summary judgment is granted dismissing this cause of action.

In sum, the complaint is dismissed in its entirety with costs and disbursements to the defendant. Submit judgment accordingly on notice.

The foregoing is so ordered.